Argued June 18, reversed July 7, 1914.

## FIRST NAT. BANK *v.* GAGE, Sheriff.

(142 Pac. 539.)

Deeds—Form—Seal.

1. An unsealed deed is at least a contract for a conveyance, and, if insufficient to convey title, creates an equitable title in the grantee to the extent of the grantor's title.

Vendor and Purchaser—Bona Fide Purchaser—Notice.

2. Though the record of an unsealed deed is not constructive notice, knowledge of such facts as were sufficient to put one on inquiry is notice of any facts that might have been ascertained by such inquiry.

[As to effect of defective recording of instruments, see notes in 91 Am. Dec. 106; 96 Am. St. Rep. 397. As to right to record instrument void on its face, see note in Ann. Cas. 1912C, 675.]

Attachment—Claims of Third Persons—Burden of Proof.

3. Under Sections 301, 302, L. O. L., making an attaching creditor without notice of an outstanding equity a purchaser in good faith, the burden is on the attaching creditor to allege and prove that he had no notice or knowledge of the outstanding equity at the time of the attachment.

Attachment—Claims of Third Person—Sufficiency of Evidence.

4. In a suit to enjoin the sale on execution of property which plaintiff had conveyed by an unsealed deed, evidence *held* insufficient to show that the attaching creditor did not have knowledge of the deed.

From Coos: John S. Coke, Judge.

Department 2.    Statement by Mr. Justice Eakin.

This is a suit by the First National Bank of North
Bend, a corporation, against W. W. Gage, as sheriff
of Coos County, Oregon, and the North Bend Hard-
ware and Supply Company, a private corporation, to
enjoin the sheriff from selling on execution, as the
property of J. Virgil Pugh, an undivided one-half
interest in lots 8 and 9 of block 13, North Bend, Coos
County, Oregon, known as the bank property.    The
lots originally belonged to the bank and Pugh jointly,
and in 1909 and 1910 they erected the present building,
which has since been occupied, the corner by the plain-
tiff as a bank, one room by the Hazer Hardware Com-
pany, the center room by the North Bend Mercantile
Company, and the upper story by offices.    Pugh was
the principal stockholder in and manager of the North
Bend Mercantile Company, and continued to own his
half interest in the lots and building until the first
day of April, 1910, when he attempted to convey it to
the Oregon Trust Company for the consideration ex-
pressed therein, of $1,000, though really in payment
of the sum of $12,500 loaned by the bank to Pugh, with
which to pay his part of the expense of the erection
of the building.    Thereafter, on the 9th day of Feb-
ruary, 1911, the lots were conveyed by the Oregon
Trust Company to the bank.    Pugh was indebted to
the North Bend Hardware & Supply Company in the
sum of about $1,600, and on the 27th day of July, 1910,
said company sued Pugh on said account, and on that
day duly levied an attachment in said action upon the
said undivided half of said lots 8 and 9.    The said ac-
tion resulted in judgment in favor of plaintiff in the
sum of $1,625, and thereafter execution thereon was
placed in the hands of the defendant, Gage, and he was
proceeding to sell said undivided half of said lots

8 and 9 when this suit was commenced, which seeks to perpetually enjoin the defendant from selling said lots.

The answer alleges the attachment proceedings; that the action resulted in judgment in plaintiff's favor, and the issue of the execution thereon. It denies that at the time of the attachment the Oregon Trust Company was the owner of said undivided half interest in said lots, but that the title thereto was in Pugh, and that defendant had no knowledge or information of any claim, or pretended claim, by the Oregon Trust Company to said undivided half of said lots at the time of said attachment, to which answer a demurrer was overruled.

The reply is a general denial. From a decree for the defendant, plaintiff appeals.

REVERSED. INJUNCTION ALLOWED.

For appellant there was a brief over the names of *Messrs. Hammond & Hollister* and *Mr. N. C. McLeod,* with an oral argument by *Mr. Austin S. Hammond.*

For respondent there was a brief over the names of *Mr. Charles F. McKnight* and *Mr. John D. Goss,* with an oral argument by *Mr. McKnight.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1-4. The deed of date April 1, 1910, from Pugh to the Oregon Trust Company (the stockholders of which were principally the stockholders in the plaintiff bank), although signed by Pugh and wife, was not sealed. Defendant insists it was not entitled to record, that he had no knowledge of its existence, and that it is therefore void as to the attaching creditor. Plaintiff contends that, although unsealed, it was recorded, which record was constructive notice to the defendant,

and further contends that defendant had actual knowledge thereof, and therefore that the defendant acquired no lien thereon by the attachment. The controversy is as to the effect of the unsealed deed of April 1, 1910, the recording of it in that condition, and whether the plaintiff in the attachment had knowledge thereof, either actual or constructive. The deed was at least a contract for a conveyance, if insufficient to convey the title, and created an equitable title in the trust company to the extent of the value the bank had in it. This deed was not entitled to record because of the absence of the seal, and therefore the record of it was not constructive notice, but actual notice thereof, or knowledge of such facts as were sufficient to put the attaching creditor on inquiry, was notice of any facts that might have been ascertained by such inquiry. By Sections 301, 302, L. O. L., an attaching creditor without notice of an outstanding equity is deemed a purchaser in good faith: *Boehreinger* v. *Creighton et al.,* 10 Or. 42; *Faull* v. *Cooke,* 19 Or. 455 (26 Pac. 662, 20 Am. St. Rep. 836); *Rhodes* v. *McGarry,* 19 Or. 222 (23 Pac. 971). Thus, the defendant's right here depended upon whether the attaching creditor had notice of the outstanding equity of the trust company or of plaintiff. The burden was upon the defendant to bring himself within the statute by alleging and proving that he had no notice or knowledge of the outstanding equity at the time of the attachment: *Baker* v. *Woodward,* 12 Or. 3 (6 Pac. 173); *Rhodes* v. *McGarry et al.,* 19 Or. 222 (23 Pac. 971); *Osgood* v. *Osgood,* 35 Or. 1 (56 Pac. 1017). In *Riddle* v. *Miller,* 19 Or. 468 (23 Pac. 807), it is held that after the attaching creditor was informed of the outstanding equity, or of the facts sufficient to put him on inquiry, by which inquiry he could have learned thereof, his attachment was subject

to it: *Cantwell* v. *Barker,* 62 Or. 12 (124 Pac. 264). There is direct testimony of such knowledge by defendant, namely, the statement of Pugh to the effect that he told the representatives of the plaintiff, John R. Smith, the president of the North Bend Hardware & Supply Company, the attaching creditor, and J. W. Gardner, its secretary, that the building belonged to the Oregon Trust Company. Although denied by said parties, defendant's attorney, who brought the attachment action, testified as to what steps he took to ascertain the property to be attached:

"The day that I commenced this action, and before I commenced it, I had Mr. Barton, of the Title Guaranty & Abstract Co., examine his records and ascertain if the interest that Pugh had in this property, and he advised me of the interest that he held in what is generally known as the First National Bank property, as described in the records here, and he advised me that the property was in J. Virgil Pugh; that is the only examination that I ever made, I took his examination as an officer of the Title Guaranty & Trust Company.

"Q. Did you make any examination of the record yourself?

"A. I was present there and looked over his notes with him.

"Q. Did you see or learn of the existence of any deed, or any record of any pretended deed, such as plaintiff's exhibit No. 2 (the unsealed deed)?

"A. Not until after this present suit was commenced.

"Q. Then at the time this action was commenced did you, as attorney for the North Bend Hardware & Supply Co., have any notice or knowledge of the existence of this deed, or any records showing the deed? * *

"A. None whatever. The first knowledge I had of this as attorney for the North Bend Hardware & Supply Company, or any other person, was after the commencement of this present suit that we are now trying."

This proof is not convincing that at the time of the attachment McKnight did not know of the unsealed deed. The purpose of this testimony was to show that he did not know that the title to the property had been conveyed at the time he attached, and that is all that it amounts to. Barton, the abstracter, was not called as a witness, but, being in the business, he must have had notice of the unsealed deed, and when consulted as to the title of those lots he must have imparted his knowledge of the defective deed to his client, who was undoubtedly paying him for his professional services. He was in duty bound to tell him, and when "he advised [McKnight] that the property was in Pugh," he was giving a legal opinion as to the effect of the unsealed deed. McKnight was present and looked over Barton's notes with him, which must have shown the record of the deed. It is not shown what Barton's notes contained, but whatever they did show McKnight knew. We are entitled to know their contents, and, if they did not show this deed, then why they did not; and the defendant is to be presumed to have had knowledge of whatever those notes disclosed. Taking this doubtful evidence in connection with the testimony of Pugh that he told defendant's representatives that the building belonged to the Oregon Trust Company, defendant's testimony is not satisfactory or convincing that it did not have knowledge of this deed, and it does not bring defendant within the provisions of Section 301, L. O. L., to be deemed a *bona fide* purchaser in good faith and for valid consideration.

The decree is reversed and the perpetual injunction allowed.          REVERSED. INJUNCTION ALLOWED.

MR. JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE MCNARY concur.