Argued and submitted June 23, 2015, affirmed June 28, 2017

Sandra QUESNOY
and Katelyn S. Oldham,
*Petitioners,*

*v.*

DEPARTMENT OF REVENUE,
*Respondent.*

Office of Administrative Hearings
1202866; A154276

400 P3d 960

Katelyn S. Oldham argued the cause and filed the briefs for petitioners.

Denise Fjordbeck, Assistant Attorney General, argued the cause for respondent. On the briefs were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Cecil A. Reniche-Smith, Assistant Attorney General.

Kristina J. Holm, Julia E. Markley, Christopher L. Garrett, and Perkins Coie LLP, filed the brief *amicus curiae* for the American Civil Liberties Union of Oregon, Inc.

Phil Goldsmith, Law Office of Phil Goldsmith, Charles S. Tauman and Charles S. Tauman, PC, filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

## HADLOCK, C. J.

Several years ago, petitioner Quesnoy was convicted of a property crime. Her sentence included an 18-month term of incarceration and a requirement that she pay nearly $250,000 in restitution. The judgment of conviction ordered that $148,455.55 of the restitution "be referred to the Oregon Department of Revenue [(DOR)] for collection." Quesnoy later sued the State of Oregon, the Department of Corrections, and individual state employees in federal court, alleging that those defendants had violated her statutory and constitutional rights while she was incarcerated. She ultimately prevailed on some of her claims against the state and one individual defendant, and she was awarded a total of $50,000.00 in damages plus $121,970.20 in attorney fees and costs.

DOR initially sought to garnish both of those amounts as setoff against Quesnoy's restitution debt. After a contested case proceeding and some procedural complications that we describe below, DOR issued a final order on reconsideration that allows DOR to garnish the $50,000.00 damages award but that prohibits DOR from garnishing the $121,970.20 award for attorney fees and costs. On judicial review from that order on reconsideration, petitioners raise six claims of error.[1] We reject each of those six claims of error for the reasons set out below. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

No party has challenged the factual findings in DOR's final order on reconsideration. Accordingly, those findings establish the facts for the purposes of judicial review. *Jefferson County School Dist No 509-J v. FDAB*, 311 Or 389, 393 n 7, 812 P2d 1384 (1991). Our description of the facts is therefore based mainly on DOR's findings; to add context, we also set out some evidence from the record regarding facts that are not in dispute.

---

[1] Petitioner Quesnoy is the individual plaintiff who was awarded damages in the federal litigation. Petitioner Oldham was Quesnoy's attorney in the federal case and also represents her in this proceeding.

A. *Quesnoy's Conviction, the Restitution Judgment, Quesnoy's Successful Federal Suit, and DOR's Efforts at Garnishment*

In 2009, Quesnoy was convicted of first-degree aggravated theft of over $50,000. She was sentenced to 18 months in prison and ordered to pay nearly $250,000 in restitution. The judgment in the criminal case identified the state as the judgment creditor and included an order that "$148,455.55 of the victim restitution * * * be referred to [DOR] for collection."

The following year, Quesnoy brought a federal action against the State of Oregon and a state corrections employee, Raines, among others, for alleged "violations of [her] federally protected rights and rights protected by the state of Oregon" while she was incarcerated at the Coffee Creek Correctional Facility. As pertinent here, Quesnoy alleged that the state had violated state and federal laws prohibiting discrimination on the basis of disability. Those claims were based on Quesnoy's assertion that the state had failed to accommodate her disabilities, which impair her mobility, by (among other things) placing her in segregation without a wheelchair or walker. Quesnoy alleged that she suffered "humiliation, frustration, distress, physical pain, mental anguish, anxiety and loss of her freedom" as a result of the failure to accommodate her disabilities.[2] In separate claims, Quesnoy alleged that Raines had unlawfully retaliated against her, after Quesnoy protested her treatment in prison, and had also violated Quesnoy's rights under the Fourteenth Amendment to the United States Constitution.

Quesnoy ultimately succeeded on her claims against Raines for retaliation and for violation of her Fourteenth Amendment rights; she also prevailed on her claims that the state had violated state and federal disability-discrimination statutes. The jury awarded Quesnoy $15,000 on her claims against Raines and $35,000 on her claims against the state. The federal district court entered a $50,000 judgment in Quesnoy's favor in February 2012. At that point, Quesnoy

---

[2] Quesnoy's complaint included additional claims, but she did not prevail on them and they are not relevant to this case.

had requested an award of attorney fees and costs, but the district court had not yet ruled on that request.

Shortly after entry of the federal district court judgment, DOR notified petitioners of its intention to garnish that money judgment. Petitioners challenged the garnishment, asserting that $10,000 of Quesnoy's $35,000 damage award against the state was exempt under ORS 18.345(1)(k) as payment awarded for personal bodily injuries.[3] Specifically, Quesnoy asserted that her successful claims against the state "related to injuries and harm she suffered while incarcerated because she was denied access to needed mobility devices." Oldham also asserted that she had an interest in the attorney fees and costs yet to be awarded.

The federal district court subsequently entered a supplemental judgment awarding Quesnoy $121,970.20 in attorney fees and costs. Oldham filed a notice of attorney's lien against that supplemental judgment, which DOR sought to garnish.[4] Over the next few months, the parties continued to dispute whether DOR properly could garnish either the damages award or the award of attorney fees. DOR denied each of the challenges to garnishment.

B. *The Contested Case Hearing and the Initial Final Order*

Petitioners eventually requested a contested case hearing on the garnishment matter, and a hearing was scheduled before an administrative law judge (ALJ). As later framed in the ALJ's final order, the issue to be decided at the hearing was whether the awards for damages and for attorney fees and costs were exempt from garnishment.

In a hearing memorandum, petitioners asserted that, while Quesnoy had been confined in segregation without a wheelchair or walker, she had "had to crawl to her toilet, had to crawl to the sink if she wished to access

---

[3] Quesnoy did not immediately identify ORS 18.345(1)(k) as the source of her claimed exemption; however, it appears that all involved understood that to be the case. ORS 18.345(1)(k) provides that a debtor's property "that is traceable to" a payment "not to exceed a total of $10,000.00, on account of personal bodily injury of the debtor" is exempt from execution.

[4] The funds actually were held by the Department of Administrative Services (DAS) as "money owing from the State to [Quesnoy]." Thus, DOR's writ of garnishment was issued to DAS.

water, experienced physical injury due to falls in the cell, and experienced significant emotional distress and humiliation." Petitioners also asserted that Quesnoy had experienced dehydration and that her physical condition deteriorated. They argued that $10,000 of Quesnoy's damages award against the state should, therefore, be exempt from garnishment under the "personal bodily injury" exemption.

Petitioners also raised various challenges to DOR's ability to garnish the award of attorney fees and costs. Among other things, petitioners argued (in a memorandum and at the hearing) that the Supremacy Clause of the United States Constitution precluded garnishment of that award, that the attorney-fee lien held by Oldham took priority over the restitution debt, that the equitable remedy of setoff could not be used to accomplish garnishment under the circumstances here, and that the state would be unjustly enriched if it were permitted to garnish the judgments. DOR filed a memorandum supporting its right to garnish.

At the contested case hearing, Quesnoy testified in support of her contention that part of her damages award could not be garnished, given the "personal bodily injury" exemption. Quesnoy asserted that—in the federal civil case—she had testified to the jury about experiencing two falls as a result of being deprived of a mobility device while in segregation. Quesnoy also asserted that she had testified to the federal jury about physical injuries she had sustained and the medical treatment she had obtained for those injuries. She heard her attorney argue in closing that the jury should award damages for those injuries; the $35,000 damages award against the state followed.

On cross-examination, Quesnoy acknowledged that she had also testified in the federal action about "some mental health issues" that she had experienced while in segregation, including having been "under duress" and experiencing "humiliation and not being able to walk or move around freely." Quesnoy could not recall how much time she spent testifying at the federal trial about her physical injuries as compared to the time she spent testifying about mental health issues. Quesnoy was not aware of any documents or

oral statements that would reveal how much of the damage award was attributable to "the falls or the bedsores or the mental health issues."

In closing argument before the ALJ, DOR questioned whether Quesnoy had met her burden of establishing entitlement to the "personal bodily injury" exemption from garnishment:

"I want to briefly address the claim for exemption that [Quesnoy] has. If she's claiming exemption for bodily injury, which would exempt up to ten thousand dollars, and I believe the principle is that *if a party is going to claim exemption they have the obligation to—they have the burden to come forward and show that they are entitled to that exemption.* * * *

"I think she has shown that there was some element of bodily injury here. I don't think she's—that's her burden to show the whole ten thousand. She acknowledged that, that damages she got on this claim were for two falls and bedsores and mental health damages. It's difficult to divide up among those and decide, you know, well, how much of this is for bodily injury. And frankly, I don't have a good suggestion for you on value, but *she has to do it.* I suspect you've got discretion probably to determine on your own based on what you have as to whether or not of that thirty-five thousand, ten thousand or more applies to bodily injury * * *. I don't think the evidence is clear. *I don't know that she has satisfied her burden on that* and so you need to take that into consideration when you're trying to determine whether or not she's entitled to the exemption."

(Emphases added.) DOR also presented arguments about why, in its view, it was entitled to garnish the award of attorney fees and costs.

In response, petitioners reiterated their arguments about why DOR could not properly garnish the award of attorney fees and costs. With respect to garnishment of the damages award, Quesnoy did not counter DOR's contention that she had the burden of proving that at least $10,000 of that award represented compensation for personal bodily injury; indeed, she did not respond to that aspect of DOR's argument at all.

The ALJ requested, and the parties filed, post-hearing memoranda on issues other than the "personal bodily injury" exemption. In a post-hearing memorandum, petitioners closed by asserting that, "at the hearing and in [her exhibits, Quesnoy] demonstrated that she is entitled to the full amount of the exception—$10,000—for the personal injuries she sustained." Again, petitioners did not question DOR's earlier assertion that Quesnoy bore the burden of persuasion on that issue.

The ALJ issued a final order in early 2013 in which she concluded that DOR was entitled to garnish both the $50,000 damages award and the larger award of attorney fees and costs. In doing so, the ALJ rejected each of petitioners' challenges to garnishment, holding (as pertinent here) that DOR had "the right of set off against monies due from the State" to Quesnoy, that the attorney's lien filed by Oldham did not "trump" DOR's "right to equitable setoff," that the federal Supremacy Clause did not place the judgment for attorney fees and costs beyond the reach of creditors under state law, and that "[e]quity weighs in the State's favor" and favors DOR's entitlement to setoff.

With respect to petitioners' contention that $10,000 of Quesnoy's damages award was exempt from garnishment, the ALJ explained that, "[a]s the party claiming the exemption, Quesnoy bears the burden of proof." Relying on a decision of the United States Bankruptcy Court for the District of Oregon, the ALJ ruled that the "personal bodily injury" exemption applies only to "'funds received on account of *a physical injury to the body of the debtor*.'" (Quoting *In re Cope*, 280 BR 516, 519-20 (Bankr D Or 2001) (emphasis added by ALJ's order).) Finding "no evidence in testimony or in the written judgment to support apportioning damages among various theories advanced at trial and in closing argument "in the federal case, the ALJ ruled that Quesnoy had not produced evidence "sufficient to attribute which, if any, part of the jury award and judgment * * * to 'physical injury' to her body." Accordingly, the ALJ ruled that no portion of the damages award was exempt from garnishment under ORS 18.345(1)(k).

C. *Petitioners' Opening Brief on Judicial Review*

Petitioners petitioned for judicial review of the ALJ's final order and raised four assignments of error in their

opening brief. In the first three assignments of error, petitioners challenged aspects of the ALJ's ruling that the award of attorney fees and costs was subject to garnishment. First, petitioners asserted that the Supremacy Clause "prohibits the State from garnishing the fees and costs awarded as part of the enforcement mechanism of federal civil rights statutes." Second, they challenged the ALJ's decision allowing the remedy of setoff to be used to garnish the supplemental judgment for attorney fees and costs. Third, petitioners argued that the ALJ erred in rejecting their argument that DOR was "equitably stopped by the doctrine of unjust enrichment from garnishing the supplemental judgment of attorney[] fees and costs." Thus, each of petitioners' first three assignments of error challenged the ALJ's rulings only with respect to garnishment of the award of attorney fees and costs.

In their fourth assignment of error, petitioners challenged the ALJ's ruling that Quesnoy's entire damages award was subject to garnishment and that she had not proved that $10,000 of that award qualified for the "personal bodily injury" exemption. We describe petitioners' arguments on that point in more detail later in this opinion.

D. *DOR's Withdrawal of the Final Order, DOR's Issuance of a Final Order on Reconsideration, and Petitioners' Supplemental Opening Brief*

In response to petitioners' opening brief, DOR withdrew the ALJ's final order for reconsideration. Two months later, the DOR's director issued a final order on reconsideration. In that order, DOR adhered to "the ALJ's conclusion that the $50,000 compensatory damages awarded to [Quesnoy] *** was subject to garnishment as setoff against her criminal restitution debt to the state." DOR also continued to assert that it was entitled to garnish "the district court judgments against the State in [Quesnoy's] favor" based "on the common-law doctrine of setoff." However, DOR ultimately agreed with petitioners that the Supremacy Clause "preempt[s] [DOR's] garnishment of the supplemental award of attorney[] fees on behalf of the State, because that garnishment would undermine Congress's purpose in enacting the fee-shifting provisions of 42 USC [section]

1988." Accordingly, DOR "affirmed in part and reversed in part" the ALJ's final order. In conclusion, DOR ordered:

"[DOR] may garnish the $50,000 in compensatory damages awarded to [Quesnoy] in the district court judgment dated February 3, 2012, as setoff against [Quesnoy's] restitution debt to the State resulting from her criminal conviction. [DOR] may not garnish the $121,970.20 awarded to [Quesnoy] in the Supplemental Judgment for attorney fees and costs."

Petitioners seek judicial review of that final order on reconsideration.

In a supplemental opening brief, petitioners rely on the four assignments of error in their initial opening brief; they also raise two additional assignments of error addressing what they deem to be "the new issues raised by the limitations of the State's Final Order on Reconsideration." In their first supplemental assignment of error, petitioners assert that DOR "erred in failing to include appropriate interest in its calculation and payment of the $121,970.20 in attorney fees and costs from the supplemental judgment that was unlawfully garnished in April of 2012." In conjunction with that argument, petitioners acknowledge that the state "remitted a check in the amount of the original Supplemental Judgment, $121,970.20, after admitting it was legal error to have garnished the Supplemental Judgment two years prior." Petitioners also acknowledge that the state has remitted a check for $2,895.48 in interest on that amount, calculated from April 6, 2012 to April 3, 2014; they assert that they have not negotiated that check because they believe that the payment is too small because interest should have been calculated at a nine percent rate.[5]

In their second supplemental assignment of error, petitioners argue that DOR erred by failing to include an award of attorney fees and costs in the final order on reconsideration. Petitioners claim entitlement to fees under ORS

---

[5] The state issued those checks after the final order on reconsideration issued and they are, therefore, not evidenced in the record on judicial review. However, DOR appears to accept petitioners' assertions about the checks, and we consider those assertions only for the purposes of determining whether, as DOR argues, some of petitioners' assignments of error are moot or otherwise not justiciable.

20.105 and ORS 183.497 on the ground that DOR "had no objectively reasonable basis for the garnishment."

## II. ANALYSIS

We address petitioners' six assignments of error—four from their initial opening brief and two from their supplemental opening brief—in turn. As noted, petitioners have not challenged any of DOR's factual findings; rather, their assignments of error raise purely legal questions. Accordingly, we review the challenged aspects of the final order on reconsideration for legal error.

In the first three assignments of error in their initial opening brief, petitioners challenge the ALJ's ruling that the $121,970.20 award of attorney fees and costs was subject to garnishment. Petitioners' challenges reduce to contentions that (1) the Supremacy Clause precludes that garnishment, (2) the ALJ "erred in deciding that the attorney's lien held by [Oldham] did not have priority and in determining the equitable remedy of setoff could be used to garnish" the fee award, and (3) the state was not entitled to garnish the award of fees and costs through setoff because the state would be unjustly enriched by any such garnishment.

In their supplemental opening brief, petitioners acknowledge that DOR has now ruled, in the final order on reconsideration, that the Supremacy Clause precludes it from garnishing the award of attorney fees and costs in Quesnoy's federal action. Petitioners also acknowledge that their challenges to the ALJ's earlier ruling that DOR could garnish that award "could be argued" to be moot. Nonetheless, petitioners ask this court to review the orders "to the extent the State asserts that it may garnish by 'setoff' separate awards for attorney[] fees and costs even when there is a valid attorney's lien." Petitioners ask us to reach that issue because it "creates a troubling precedent for attorneys who represent indigent clients whose civil rights have been violated, but who owe debts" to the state.

In response, DOR contends that petitioner's first three assignments of error from their initial opening brief are moot, as they challenge only an aspect of the ALJ's

final order that does not survive DOR's final order on reconsideration—the ALJ's ruling that DOR could garnish the award of attorney fees and costs in Quesnoy's federal litigation. Further, DOR explains:

"In the Final Order on Reconsideration, [DOR] agreed with petitioner[s] that garnishment of the attorney fee award was inconsistent with Congress's purpose in legislating for such awards and, therefore, was barred by the Supremacy Clause of the United States Constitution. As [Quesnoy] has conceded, she has since received payment by the State of that attorney fee award. Accordingly, because there is no further relief that petitioner[s] could obtain on [their] first three assignments of error, the issues raised in those assignments have been rendered moot."

We agree that the arguments raised in petitioners' first three assignments of error are moot or otherwise not justiciable. The issue raised in petitioners' first assignment of error—the one premised on the Supremacy Clause— is moot because DOR acknowledged in the final order on reconsideration that the Supremacy Clause precludes DOR from garnishing the award of attorney fees and costs from the federal litigation. The arguments raised in petitioners' second and third assignments of error also are moot, as they challenge only DOR's ability to garnish the award of fees and costs, which DOR no longer claims a right to do. *See Todd v. Board of Parole*, 161 Or App 143, 145, 987 P2d 525 (1999) (the petitioner's challenge to a board order designating him as a predatory sex offender became moot when the board issued an order on reconsideration that deleted the predatory-sex-offender designation).

As noted, petitioners nonetheless urge us to review what they describe as DOR's continuing assertion that it may garnish awards of attorney fees in other circumstances. In that regard, it is not entirely clear whether petitioners are relying on analysis that is contained in the original final order or on discussion that is included in the final order on reconsideration. In either case, petitioners' argument fails.

To the extent that petitioners continue to challenge the original final order, their challenge is moot because that final order has been withdrawn and has no legal effect.

*Cf. State ex rel. Juv Dept v. Holland*, 290 Or 765, 767, 625 P2d 1318 (1981) ("A case becomes moot for the purpose of an appeal when, because of a change of circumstances prior to the appellate decision, the decision would resolve merely an abstract question without practical effect."); *Progressive Party of Oregon v. Atkins*, 276 Or App 700, 708, 370 P3d 506, *rev den*, 360 Or 697 (2016) (declaratory judgment action challenging an administrative rule became moot when the rule was repealed). And petitioners' challenge is not justiciable to the extent that it is aimed against the final order on reconsideration. That is so because no ruling regarding DOR's ability to garnish awards of attorney fees in *other* circumstances would have any practical effect on petitioners' rights in *this* case. *See Brumnett v. PSRB*, 315 Or 402, 405-06, 848 P2d 1994 (1993) (a petition for judicial review is moot when the reviewing court's decision will not have a practical effect on the parties' rights).

We turn to the fourth assignment of error in petitioners' opening brief, in which they challenge the ALJ's determination that the entirety of Quesnoy's $50,000 damages award was subject to garnishment. That assignment is not moot because DOR adhered to that aspect of the ALJ's ruling in its final order on reconsideration.

The bases of petitioners' challenge to garnishment of the damages award have morphed over time. Accordingly, we set out the arguments that the parties have made to this court in chronological order.

In their initial opening brief, petitioners assert that the ALJ erred in determining that Quesnoy bore the burden of proving the exemption from garnishment. On the merits, petitioners argue that Quesnoy's "disability discrimination claim related to physical injuries and harm she suffered because she was denied access to her mobility devices." Petitioners contend that, because the federal jury awarded damages after hearing evidence that Quesnoy suffered physical injuries as a result of being deprived of a mobility device, the damages award "squarely falls under" the ORS 18.345(1)(k) exemption for up to $10,000 in "payment or payments * * * on account of personal bodily injury of the debtor." Petitioners' supplemental brief, filed after DOR issued the

final order on reconsideration, includes no additional argument on this point.

In its answering brief, DOR asserts that, because Quesnoy "sought to shield her assets from garnishment, she bore the burden of proving the application of the exemption for personal injury awards to the district court's general judgment." More specifically, DOR argues that Quesnoy had the "burden to demonstrate that at least $10,000 of the compensatory damages she was awarded was 'on account of personal bodily injury.'" DOR contends that the ALJ could reasonably find that Quesnoy had not met that burden because, in her federal action, she sought damages not only for physical injuries, but also for mental anguish, anxiety, and humiliation, and no evidence in the record indicates what portion of her $35,000 damages award against the state was for physical injuries as opposed to mental harm.

In their reply brief, petitioners do not challenge DOR's assertion that only payments for physical injury are exempt under ORS 18.345(1)(k). Rather, they purport to be "mystified" at what they contend is a "new position," expressed by DOR for the first time in its answering brief, that Quesnoy bore the burden to prove that the exemption applied. Petitioners assert that both the ALJ, in the initial order, and DOR, in the order on reconsideration, placed the burden of proof on DOR. Thus, petitioners contend, they "would be severely disadvantaged were the burdens of proof to be swapped at this late stage." Petitioners then argue that DOR failed to meet *its* burden to prove that the "personal bodily injury" exemption does *not* apply.

Petitioners' dismay about the burdens of proof supposedly having been "swapped" is misplaced. True, as the ALJ explained in her final order, the party asserting that funds *generally* are subject to garnishment bears the burden of proving that proposition. *Cf.* ORS 18.782 ("The proceedings against a garnishee shall be tried by the court as upon the trial of an issue of law between a plaintiff and defendant."); *Matsuda v. Noble*, 184 Or 686, 703-04, 200 P2d 962 (1948) ("[T]he burden is upon the attaching creditor to bring himself within the terms of the statute * * *[.]"). But DOR has argued from the outset that a party claiming a

statutory *exemption* from garnishment—here, Quesnoy—bears the burden of proving that the party is entitled to the claimed exemption. DOR expressed that position clearly during the contested case hearing: "[I]f a party is going to claim exemption they have the obligation to—they have the burden to come forward and show that they are entitled to that exemption." DOR also suggested that Quesnoy's testimony at the hearing might not have "satisfied her burden" on that point.

The ALJ took the same position in her final order, explaining that, once the party seeking garnishment has met its initial burden, a party claiming an exemption from garnishment has the burden of proving entitlement to that exemption. Indeed, petitioners challenged that aspect of the final order in their initial opening brief, asserting that the ALJ "erred in determining that it was Quesnoy, not the State who had the burden of proof on this issue." And in its final order on reconsideration, DOR, like the ALJ, ruled that "Quesnoy bears the burden of proof" because she is "the party claiming the exemption." There is no merit to petitioners' contention that they could not have known until DOR filed its answering brief in this court that DOR was taking the position that Quesnoy bore the burden to prove entitlement to the exemption.

We turn to the related question that petitioners raised in their initial opening brief—whether the ALJ erred in ruling that Quesnoy bore the burden of proving that $10,000 of her damages award against the state was exempt under ORS 18.345(1)(k). The ALJ was correct. A person claiming an exemption from garnishment has the burden to prove entitlement to the exemption. *See Childers v. Brown,* 81 Or 1, 8, 158 P 166 (1916) (stating, "[t]he burden is on the claimant and he must aver and establish every fact essential to the exemption" from attachment under a predecessor statute to ORS 18.345). Petitioners' contrary assertion lacks merit.

Finally, we consider petitioners' contention that Quesnoy was entitled to the ORS 18.345(1)(k) exemption for payments "on account of personal bodily injury of the

debtor," because she put on evidence that the federal damages award was based on her testimony that she had suffered physical injuries while confined without a mobility device. The difficulty with that argument is, as DOR points out, that Quesnoy also sought damages for *mental* harm in association with the conditions of her confinement, and no evidence in the record suggests what portion of Quesnoy's $35,000 damages award against the state was based on her "bodily injury" as opposed to her mental anguish, anxiety, and humiliation. Thus, DOR argues, Quesnoy did not meet her burden of proving entitlement to the exemption.

Petitioners have not challenged DOR's portrayal of the federal litigation. Specifically, petitioners have not disputed DOR's assertion that part of the federal damages award may represent compensation for the mental harm that Quesnoy testified she suffered. Nor have petitioners challenged the legal basis for DOR's argument—that damages for mental harm do not fall within the ORS 18.345(1)(k) "personal bodily injury" exemption. Petitioners do not explain why, given those unchallenged factual and legal premises, the ALJ and DOR erred in concluding that Quesnoy did not meet her burden of establishing that at least $10,000 of her damages award was payment on account of personal bodily injury. Accordingly, the arguments that petitioners make in conjunction with their fourth assignment of error present no basis for us to reverse DOR's final order on reconsideration.

We turn, briefly, to the two assignments of error that petitioners raise in their supplemental opening brief. They first contend that DOR erred "in failing to include appropriate interest in its calculation and payment of the $121,970.20 in attorney fees and costs from the supplemental judgment that was unlawfully garnished in April of 2012." Petitioners argue that they are entitled to nine percent interest on that amount "for the two years [that DOR] unlawfully retained the $121,970.20."

That argument is not properly before us. To the extent that petitioners assert that the final order on reconsideration *itself* should have included a calculation and award of interest at nine percent, petitioners did not present that argument to DOR before issuance of the final order on

reconsideration and it is, therefore, not preserved for judicial review. And to the extent that petitioners' argument is (as they acknowledge), based on their dissatisfaction with the payments that DOR tendered *after* issuance of the final order on reconsideration, petitioners' argument cannot be addressed in conjunction with our review of that order. We cannot reverse an agency's order on the basis of events that occurred after the order issued and that are not reflected in the record on judicial review.

In their second supplemental assignment of error, petitioners assert that DOR "erred in failing to provide for an award of attorney fees and costs" in the final order on reconsideration. That argument is not preserved for review in this proceeding, as petitioners did not seek a specific award of fees and costs from DOR before the final order on reconsideration issued.

Petitioners also appear to contend that we should award them attorney fees and costs in association with DOR's belated acknowledgement that it could not properly garnish the attorney fees and costs that were awarded in the federal litigation. That request is premature. If petitioners continue to believe that they are entitled to an award of attorney fees and costs, they may file an appropriate post-decision petition with us pursuant to ORAP 13.10.

Affirmed.