RIALTO PUBLISHING COMPANY and Triad Newspapers, Inc., Appellants,

v.

Irving I. BASS, Trustee in Bankruptcy of the Estate of McDaniel's Markets, bankrupt, Appellee.

No. 18508.

United States Court of Appeals Ninth Circuit.

Dec. 19, 1963.

———◆———

Marshall Miles, San Bernardino, Cal., for appellants.

Nat Rosin, Bertram H. Ross and Harry L. Schuman, Los Angeles, Cal., for appellee.

Before MERRILL and KOELSCH, Circuit Judges, and BOWEN, District Judge.

BOWEN, District Judge.

On June 22, 1961 both of the appellants, Triad Newspapers, Inc. and Rialto Publishing Company, filed actions in the Municipal Court of the San Bernardino County Judicial District, County of San Bernardino, California, against McDaniel's Markets, a California corporation, to recover sums due appellants for antecedent advertising debts, and on that date attached cash at a McDaniel's Markets store.

On July 14, 1961, appellant Triad obtained a default ·judgment and levied execution against the attached cash, thereby receiving payment of $1,666.99 on its debt claim. On July 19, 1961, appellant Rialto received payment of $2,-550.05 on its debt claim by a like default judgment and writ of execution against the residue of the attached cash of McDaniel's Markets.

Then followed on September 15, 1961 an involuntary bankruptcy petition with an adjudication of bankruptcy in due course against McDaniel's Markets. Thereafter show cause orders against the appellants at the request of appellee Irving I. Bass, the trustee in bankruptcy, were timely issued and heard before the referee. Appellants consented to jurisdiction. The fact of insolvency of the

debtor on June 22, 1961 was conceded by the parties. The referee found that on June 22, 1961, when the initial attachments were levied, the bankrupt McDaniel's Markets, although appellants then had no reasonable cause to believe it, was insolvent, but that on the subsequent days of the levies of judgment execution and payment thereunder to appellants, they then did have reasonable cause to believe the bankrupt was insolvent, as it was and had been on and since June 22, 1961.

Whereupon the referee found, concluded and ruled that under § 60 of the Bankruptcy Act (11 U.S.C. § 96) the payments to appellants of the proceeds of the judgment execution writs against the attached cash constituted voidable preferences and that the trustee in bankruptcy was entitled to recover from appellants the amounts of the funds so paid to them respectively. Upon review the Trial Judge confirmed the referee's action, and appellants now appeal asking reversal of the referee and Trial Judge.

The District Court had jurisdiction under 28 U.S.C. § 1334, 11 U.S.C. § 46 (Bankruptcy Act § 23), 11 U.S.C. § 96, sub. a(1) and (2) and § 96, sub. b (Bankruptcy Act § 60, sub. a(1) and (2) and § 60, sub. b), and 11 U.S.C. § 107 (Bankruptcy Act § 67). This Court has jurisdiction under 28 U.S.C. §§ 1291 and 1294.

Appellants do not object to any of the referee's findings, all of which are amply supported by the evidence, but appellants did below and do now object to, and on this appeal in effect assign as error, the above mentioned rulings of the referee and Trial Judge.

More particularly, appellants assert and base their request for reversal upon their contention that their attachment liens became perfected (as defined in said § 60, sub. a(2)) and the transfer of the attached cash became effective when the cash was first attached and while they were without reasonable cause to believe the debtor was insolvent rather than, as the referee and Trial Judge ruled, when the cash was received by appellants through their later judgment execution levies while they did have such reasonable cause.

Appellee denies appellants' contentions. Also, appellee contends that the action of the referee and Trial Judge should be affirmed.

Here the final question as to each appellant is whether the initial attachment levy against the cash in question, without the later judgment execution against that attached cash, constitutes a lien which is a prohibited preference-producing "transfer" within the purview of the following Bankruptcy Act provisions:

"A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class". 11 U.S.C. § 96, sub. a(1) (Bankruptcy Act § 60, sub. a (1)).

"Any such preference may be avoided by the trustee if the creditor receiving it * * * has, * * * when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or * * * its value from any person who has received or converted such property, * * * *". 11 U.S.C. § 96, sub. b (Bankruptcy Act § 60, sub. b).

" 'Transfer' shall include * * * every * * * mode * * * of fixing a lien upon property or upon an interest therein, absolutely or conditionally, * * * as a * * * lien, * * * security, or otherwise * * *". 11 U.S.C. § 1(30) (Bankruptcy Act § 1(30)).

"For the purposes of subdivisions (a) and (b) of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee. * * *" 11 U.S.C. § 96, sub. a(2) (Bankruptcy Act § 60, sub. a(2)).

■ While the above quoted Bankruptcy Act provisions determine what liens constitute unlawful transfers voidable as preferences, the more specific question—whether and, if so, how and when appellants' asserted California court attachment liens under the California attachment statute became so far perfected as to become personal property transfers under the § 60 provisions—must be answered by California state law. Thus 6 Am.Jur.2d 564 states that

"Decisions of the highest court of a state as to the construction and effect of its attachment * * * laws are, in general, binding upon the federal courts". Fidelity & Deposit Co. of Maryland v. L. Bucki & Son Lbr. Co., 189 U.S. 135, 137, 23 S.Ct. 582, 583, 47 L.Ed. 744, 749. See also Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

The California attachment statute in effect in 1961 in cases like this one provided in pertinent part as follows:

"The plaintiff, at the time of issuing the summons, or at any time afterward, may have the property of the defendant attached, as security for the satisfaction of any judgment that may be recovered, unless the defendant gives security to pay such judgment * * *". California Code of Civil Procedure, § 537.

■ In the case of Puissegur v. Yarbrough, 29 Cal.2d 409, 412, 175 P.2d 830, 831, the California Supreme Court sitting en banc held with the concurrence of all the judges that

"The attaching creditor obtains only a potential right or a contingent lien * * *."

That rule was so thoroughly considered and so firmly established by the California Supreme Court in *Puissegur* that it has been accepted in two notable federal cases, one in this Court and the other in the United States Supreme Court, referred to in the next two following paragraphs. That rule still expresses the California law on the point in question.

In Ward v. Commissioner of Internal Revenue, 9 Cir., 1955, 224 F.2d 547, 551, this Court ruled that

"The attachment is merely a *sequestration* of the debtor's funds to abide the judgment. They still remain the property of the debtor and title to them passes to the attaching creditor *only* after a judgment in his favor has been entered, in which case the lien of the attachment is *merged* into that of the judgment. Kinnison v. Guaranty Liquidating Corp., 1941, 18 Cal.2d 256, 115 P.2d 450; Puissegur v. Yarbrough, 1946, 29 Cal.2d 409, 175 P.2d 830; Pintel v. K. N. H. Mohamed & Bros., 1951, 107 Cal.App.2d 328, 237 P.2d 315. The lien extends only to the interest of the debtor at the time of the levy, and the attaching creditor

'obtains only a potential right or a contingent lien.' Puissegur v. Yarbrough, supra, 29 Cal.2d at page 412, 175 P.2d at page 831."

In the case of United States v. Security Tr. & Savings Bank, 340 U.S. 47, 50, 71 S.Ct. 111, 113, 95 L.Ed. 53, 56, it was held that

"* * * if the state court itself describes the lien as inchoate, this classification is 'practically conclusive.' (Citing.) The Supreme Court of California has so described its attachment lien in the case of Puissegur v. Yarbrough, 29 Cal.2d 409, 412, 175 P.2d 830, 831, by stating that, 'The attaching creditor ob-

tains only a potential right or a contingent lien * * *.' Examination of the California statute shows that the above is an apt description. The attachment lien gives the attachment creditor no right to proceed against the property unless he gets a judgment within three years or within such extension as the statute provides. Numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded. Thus the attachment lien is contingent or inchoate—merely a lis pendens notice that a right to perfect a lien exists.

"Nor can the doctrine of relation back—which by process of judicial reasoning merges the attachment lien in the judgment and relates the judgment lien back to the date of attachment—operate to destroy the realities of the situation. When the tax liens of the United States were recorded, Morrison (the attachment creditor) did not have a judgment lien. He had a mere 'caveat of a more perfect lien to come.' " (Parentheses added.)

Counsel cite no cases and our search discloses none involving the Bankruptcy Act which control our decision in this case. Appellants cite early California cases pertaining to priority among attachment liens and among attachment and other liens, but not to the question when in the course of the attachment action an attachment lien becomes under California attachment law completely fixed as a perfected valid existing lien. They do cite cases from jurisdictions other than California pertaining to attachment liens governed by the laws of those other states, and we have considered them, but instead of the law declared in those cases under other state attachment laws we are required in harmony with Puissegur, Ward and Security Tr. & Savings Bank, supra, to apply to this case the California attachment law under which the attachment liens here are claimed by appellants.

The Puissegur, Ward and Security Tr. & Savings Bank cases, supra, did not involve all of the same facts as those here, but the primary and key question necessarily decided in those cases—when under California law does the attachment lien become completely effective as a valid perfected existing lien—is the same as the primary and key question in this case whose answer is indispensable to our decision of the issues on this appeal. All three of those cited cases, Puissegur, Ward and Security Tr. & Savings Bank, required the court's answer to that question. In all three of those cases the court's answer was in effect that such lien does not under the California state attachment law become perfected as a valid existing attachment lien by the court-ordered initial attachment alone nor without subsequent court judgment. The same answer to the same question in this case in the absence of any other applicable court ruling is unmistakably indicated by the ruling of each of those three cited cases.

■ We, therefore, hold (1) that each appellant's asserted attachment lien, by the initial California court attachment levy alone, and without subsequent court judgment thereon, became only and no more than "a potential right or a contingent lien", (2) that before and when appellants obtained court judgments and executions on their asserted attachment liens they had reasonable cause to believe the debtor was insolvent, (3) that because such reasonable cause existed before and at the time of entry of such judgments and executions, appellants at those times had no perfected or valid existing attachment liens, and the effectiveness of the debtor's later adjudged bankruptcy intervened (with like effect as if a perfected lien had before such judgment been filed, see United States v. Security Tr. & Savings Bank, supra) and made impossible as against the bankruptcy trustee the later lawful perfecting of appellants' asserted attachment liens by such subsequent judgments and executions, and (4) that when appellants received payment of their debt claims through such judgments

and executions they received voidable preferences which the trustee was entitled to recover, as the referee and Trial Judge correctly ordered.

The foregoing sufficiently disposes of all questions necessarily to be decided. We do not decide any questions raised under § 67 of the Act. Our doing so could not result in any advantage to appellants.

For the reasons above stated, the action of the referee and Trial Judge is affirmed.