357 F.2d 458
 Irving I. BASS, Trustee in Bankruptcy of Lease Finance Corp., Bankrupt, Appellant,
v.
John P. STODD, Trustee in Bankruptcy of Patrick John Gleason, etc., Bankrupt, Appellee.
John P. STODD, Trustee in Bankruptcy of Patrick John Gleason, etc., Bankrupt, Appellant,
v.
Irving I. BASS, Trustee in Bankruptcy of Lease Finance Corp., Bankrupt, Appellee.
 No. 19903.
 United States Court of Appeals Ninth Circuit.
 March 8, 1966.
 
 Nat Rosin, Bertram H. Ross, Harry L. Schuman, Los Angeles, Cal., for appellant Irving I. Bass.
 Elliott & Aune, Peter M. Elliott, Santa Ana, Cal., for cross appellant John P. Stodd.
 Hubert F. Laugharn, Los Angeles, Cal., amicus curiae brief of Hubert P. Laugharn.
 Before CHAMBERS, BARNES, HAMLEY, JERTBERG, MERRILL, KOELSCH, BROWNING, DUNIWAY and ELY, Circuit Judges.
 JERTBERG, Circuit Judge.
 
 
 1
 The case involves a contest between two trustees in bankruptcy. Appellant and cross-appellee, Bass, trustee in bankruptcy of Lease Finance Corporation, bankrupt, petitioned the Referee in Bankruptcy to require Stodd, appellee and cross-appellant, trustee in bankruptcy for one Gleason, bankrupt, to turn over the sum of $3,573.43. Following hearing the petition was denied. Both petitioned for review of the order. The district court adopted the findings and conclusions of the Referee in bankruptcy and affirmed the order of the Referee. Both trustees appealed.
 
 
 2
 The case comes to us on an agreed statement[1] which may be summarized as follows:
 
 
 3
 On July 6, 1961, an action was commenced in the Superior Court of the State of California, in and for the County of Los Angeles, by Gleason, against Lease Finance Corporation. A writ of attachment was issued out of said action and served on the California Bank on July 6, 1961, which bank answered by stating it was holding pursuant to said writ of attachment the sum of $3,573.43, funds of Lease Finance Corporation. Lease Finance Corporation was not insolvent at the time of the levy of the writ of attachment.
 
 
 4
 On December 1, 1961, Lease Finance Corporation filed a voluntary petition in bankruptcy, was duly adjudicated on the same day, and Bass was thereafter elected trustee.
 
 
 5
 On September 26, 1962, Gleason filed a voluntary petition in bankruptcy, was duly adjudicated, and Stodd was appointed trustee.
 
 
 6
 On or about September 27, 1963, a default judgment was entered in the aforementioned suit and a writ of execution issued. Pursuant to said writ and on or about October 7, 1963, the bank paid over the attached funds to Stodd, as trustee for Gleason.
 
 
 7
 On the date of the levy of the writ of execution and on the date of the payment of the funds to Stodd, Lease Finance Corporation was insolvent and Stodd had reasonable cause to believe said corporation was insolvent.
 
 
 8
 On January 19, 1964, Bass, as trustee in bankruptcy, filed a petition against Stodd, as trustee, for an order to compel Stodd to turn over to Bass the money received, contending that such payment to Stodd constituted a preferential payment to a creditor of Lease Finance Corporation, and under Section 60 of the Bankruptcy Act, Bass was entitled to have the funds returned. Section 60(a) and (b) of the Bankruptcy Act [11 U.S.C.A. § 96(a) and (b)] in pertinent part provides:
 
 
 9
 "(a) (1) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.
 
 
 10
 "(2) For the purposes of subdivisions (a) and (b) of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee. A transfer of real property shall be deemed to have been made or suffered when it became so far perfected that no subsequent bona fide purchase from the debtor could create rights in such property superior to the rights of the transferee. If any transfer of real property is not so perfected against a bona fide purchase, or if any transfer of other property is not so perfected against such liens by legal or equitable proceedings prior to the filing of a petition initiating a proceeding under this title, it shall be deemed to have been made immediately before the filing of the petition.
 
 
 11
 "(3) * * *
 
 
 12
 "(4) A lien obtainable by legal or equitable proceedings upon a simple contract within the meaning of paragraph (2) of this subsection is a lien arising in ordinary course of such proceedings upon the entry or docketing of a judgment or decree, or upon attachment, garnishment, execution, or like process, whether before, upon, or after judgment or decree and whether before or upon levy. It does not include liens which under applicable law are given a special priority over other liens which are prior in time."
 
 
 13
 "(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property * * * from any person who has received * * * such property, * * *."
 
 
 14
 In his response to the petition Stodd contended: (1) that the funds were not subject to turn over because the attachment was levied more than four months before the bankruptcy of Lease Finance Corporation and therefore was protected from attack by virtue of Section 67(a) of the Bankruptcy Act; and (2) that the petition for turn over was barred by the two-year limitation set forth in Section 11(e) of the Bankruptcy Act. Section 67(a) (1) of the Bankruptcy Act [11 U.S. C.A. § 107(a) (1)] in pertinent part provides:
 
 
 15
 "(a) (1) Every lien against the property of a person obtained by attachment, judgment, * * * within four months before the filing of a petition initiating a proceeding under this title by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) * * *."
 
 
 16
 Section 11(e) of the Bankruptcy Act [11 U.S.C.A. § 29(e)] in pertinent part provides:
 
 
 17
 "A * * * trustee may, within two years subsequent to the date of adjudication * * *, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy. * *"
 
 
 18
 The Referee found the facts to be as above stated and in his conclusions of law stated that the attachment of July 6, 1961, gave rise under California law to a potential right or contingent claim, citing Puissegur v. Yarbrough, 29 Cal.2d 409, 175 P.2d 830, and that under Rialto Publishing Company v. Bass, 325 F.2d 527 (9th Cir. 1963), no transfer occurred by reason of the attachment.[2] The Referee concluded that Section 67(a) of the Bankruptcy Act was not controlling even though the attachment antedated the bankruptcy of Lease Finance Corporation by more than four months; that the attachment lien of July 6, 1961, should be deemed to have been perfected and the transfer of said funds made immediately before the filing of the bankruptcy of Lease Finance Corporation (Section 60 (a) (2) of the Bankruptcy Act), and therefore the petition of Bass was held barred by the two-year limitation set up in Section 11(e). The Referee denied Bass' turn over petition.
 
 
 19
 Both parties petitioned for review of the Referee's order.
 
 
 20
 On review the district court adopted the findings of fact made by the Referee, with the additional finding that the existence of an attachment of the funds of Lease Finance Corporation held in the California Bank, and of the suit pending in the Superior Court were noted in Schedule B-3 to the voluntary petition in bankruptcy, and in Section A, Item No. 8 of the Statement of Affairs filed by Lease Finance Corporation; that at all times subsequent to the qualification of Bass as trustee in bankruptcy for Lease Finance Corporation, he was charged with notice of said claim and the existence of said suit against the bankrupt, and the deposit of $3,573.43 to the credit of the bankrupt with the bank and held by the bank subject to said attachment.
 
 
 21
 The district court adopted the conclusions of law entered by the Referee; denied the respective petitions for review, and affirmed the order of the Referee.
 
 
 22
 Bass has appealed from a portion of the order holding that the petition for turn over was barred by the statute of limitations contained in Section 11(e) of the Bankruptcy Act. Stodd cross-appeals contending that the district court erred in failing to deny the petition for turn over on the ground that the attachment antedating the bankruptcy of Lease Finance Corporation by more than four months was immune from attack.
 
 
 23
 The resolution of the questions of law presented on this appeal require us to review prior decisions of this court and of the Supreme Court of the United States.
 
 
 24
 Among the conclusions of law made by the Referee and adopted by the district court is that:
 
 
 25
 "The attachment of July 6, 1961, gave rise, under California law, to a potential right or a contingent lien. Puissegur v. Yarbrough, 29 Cal.2d 409 [175 P.2d 830]. No transfer occurs by reason of the attachment. Rialto Publishing Co. v. Bass, 325 F.2d 527. Therefore, Section 67a of the Bankruptcy Act is not controlling even though the attachment antedated the bankruptcy of Lease Finance Corporation by more than four months."
 
 
 26
 The facts in Rialto may be succinctly stated. Rialto, a creditor of McDaniel's Markets, a California corporation, filed an action on June 22, 1961, in the Municipal Court to recover a sum due Rialto from McDaniel's for an antecedent advertising debt, and on the same day attached cash at McDaniel's Markets store. On July 19, 1961, Rialto obtained a default judgment and levied execution against the attached cash, and on the same day received payment of its debt. On September 15, 1961 (less than four months from the date of the levy of the writ of attachment), an involuntary bankruptcy petition was filed against McDaniel's Markets and the corporation was thereafter adjudicated a bankrupt. The fact of insolvency of the debtor on June 22, 1961, was conceded by Rialto. However, the Referee found that there was no reasonable cause for Rialto to believe McDaniel's Markets was insolvent at that time, but that Rialto had reasonable cause to believe that McDaniel's Markets was insolvent on July 19, 1961, at the time it levied execution against the attached cash, and as it had been ever since June 22, 1961. The Referee concluded that under Section 60 of the Bankruptcy Act [11 U.S.C.A. § 96], the payment to Rialto of the proceeds of the judgment execution returns against the attached cash constituted voidable preferences and that the trustee in bankruptcy was entitled to recover from Rialto the amount of the cash paid to it. Upon petition to review the district judge confirmed the order of the referee.
 
 
 27
 It is to be noted that the following factual differences exist between the Rialto case and the instant case:
 
 
 28
 In Rialto less than four months [2 months, 24 days] intervened between the levy of the attachment on June 22, 1961, and the filing of the petition in bankruptcy against McDaniel's Markets on September 15, 1961. In Rialto it was conceded that the debtor was in fact insolvent on the date of the levy of the writ of attachment.
 
 
 29
 In the instant case more than four months [4 months, 27 days] intervened between the date of the levy of the attachment on July 6, 1961, and the filing of the petition in bankruptcy by Lease Finance Corporation on December 1, 1961. In the instant case Lease Finance Corporation was solvent at the time of the levy of the writ of attachment.
 
 
 30
 On appeal to this court in Rialto Publishing Co. v. Bass, 325 F.2d 527 (1963), appellant, Rialto Publishing Company sought reversal of the order of the District Court on the ground that its attachment lien became perfected upon the date of the levy of the writ of attachment and while it was without reasonable cause to believe the debtor was insolvent. In Rialto, this court expressly refrained from deciding any questions raised by the appellant under § 67 of the Bankruptcy Act [11 U.S.C.A. § 107], supra, and affirming the order of the District Court held:
 
 
 31
 (1) That appellant's writ of attachment levied on June 22, 1961, "* * * and without subsequent court judgment thereon, became only and no more than `a potential right or a contingent lien',";
 
 
 32
 (2) That when appellant, on July 19, 1961, obtained a default judgment and levied execution thereon, it had reasonable cause to believe the debtor was insolvent;
 
 
 33
 (3) That on July 19, 1961, appellant had no perfected or valid existing attachment lien and that the intervention of bankruptcy on September 15, 1961, made it impossible for the appellant to perfect such a lien as against the trustee in bankruptcy; and
 
 
 34
 (4) That when appellant received payment of its debt on July 19, 1961, through the default judgment and execution thereon, it received a voidable preference which the trustee was entitled to recover.
 
 
 35
 While we do not question that the trustee in bankruptcy was lawfully entitled to recover from Rialto the sum of money received by it on the levy of a writ of execution under the default judgment obtained by it, which was the end result of the Rialto decision,[3] nevertheless, we feel constrained to review the stated grounds upon which that decision rests. We do so because the district judge and the referee in the instant case believed that the Rialto decision was controlling, notwithstanding the factual difference in the two cases and because of the serious impact of such ruling on creditors in the administration of the Bankruptcy Act in the State of California.
 
 
 36
 The crucial and controlling question presented to us on this appeal is whether the levy by appellant on July 6, 1961, of the writ of attachment on the bank account of the debtor constitutes a transfer within the meaning of that term as used in the Bankruptcy Act.
 
 
 37
 "What constitutes a transfer and when it is complete within the meaning of § 60, sub. a of the Bankruptcy Act is necessarily a federal question, since it arises under a federal statute intended to have uniform application throughout the United States." McKenzie v. Irving Trust Co., 323 U.S. 365 at 369-370, 65 S.Ct. 405 at 407-408, 89 L.Ed. 305 (1944).
 
 
 38
 Sec. 60(a) (1) of the Bankruptcy Act states that a preference is a transfer as defined in the Bankruptcy Act of any property of the debtor to a creditor for an antecedent debt made or suffered by such debtor while insolvent and within four months before the filing of the petition in bankruptcy, the effect of which transfer will be to enable a creditor to obtain a greater percentage of his debt than any other creditor of the same class.
 
 
 39
 Sec. 60(a) (2) states that a transfer of personal property shall be deemed to have been made at the time when it becomes so far perfected that no subsequent lien on such property obtainable by legal or equitable proceedings could become superior to the rights of the transferee, and if any transfer of personal property is not so perfected against such lien prior to the filing of the petition in bankruptcy, it shall be deemed to have been made immediately before the filing of the petition.
 
 
 40
 Sec. 60(a) (4) states that a lien obtainable by legal or equitable proceedings is a lien arising in the ordinary course of such proceedings upon attachment, garnishment, execution, or like process, whether before, upon, or after judgment or decree and whether before or upon levy.
 
 
 41
 Sec. 60(b) provides that any such preference may be avoided by the trustee if the creditor receiving it has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent, and where the preference is voidable the trustee may recover the property from any person who has received such property.
 
 
 42
 Sec. 1(30) of the Bankruptcy Act [11 U.S.C.A. § 1(30)] states in relevant part that "transfer" shall include every mode of fixing a lien upon property or upon an interest therein, absolutely or conditionally, as a lien, security, or otherwise.
 
 
 43
 "In the absence of any controlling federal statute, a creditor or bona fide purchaser could acquire rights in the property transferred by the debtor, only by virtue of a state law. And hence § 60, sub. a's `apparent command is to test the effectiveness of a transfer, as against the trustee, by the standards which applicable state law would enforce against a good-faith purchaser.' Corn Exchange Nat. Bank & Trust Co. v. Klauder, 318 U.S. 434, 436-437 [63 S.Ct. 679, 87 L.Ed. 884]. See also Benedict v. Ratner, 268 U.S. 353, 359 [45 S.Ct. 566, 69 L.Ed. 991], and cases cited. Section 60a in this respect, as do numerous other federal statutes, see Davies Warehouse Co. v. Bowles, 321 U.S. 144, 155, 156 [64 S.Ct. 474, 88 L.Ed. 635] and note 20, and cases cited, thus adopts state law as the rule of decision. The state standards which control the effectiveness of a transfer likewise determine the precise time when a transfer is deemed to have been made or perfected." McKenzie v. Irving Trust Co., supra, 323 U.S. at 370, 65 S.Ct. at 408.
 
 
 44
 We thus turn to the law of the State of California to determine whether and when the attachment lien on the bank account in the instant case became so far perfected that no subsequent bona fide purchaser from the debtor could create rights to such property superior to the rights of the appellant. No question is raised as to the regularity of the attachment proceedings.
 
 
 45
 The District Court, relying upon Rialto, concluded that no transfer occurred upon the levy of the writ of attachment and since no transfer occurred prior to the filing of the petition in bankruptcy the transfer was deemed to have been made immediately before the filing of the petition in bankruptcy as provided in § 60(a) (2).
 
 
 46
 The Code of Civil Procedure of the State of California, on attachment, inter alia provides that a plaintiff, at the time of issuance of summons, may have the property of the defendant attached as security for the satisfaction of any judgment that may be recovered, unless the defendant give security to pay such judgment, in an action upon a contract, express or implied, for the direct payment of money, and the payment of the obligation is unsecured [§ 537]; the writ is issued on the furnishing by the plaintiff of an affidavit stating the facts specified in § 537, the amount of the indebtedness secured and that the attachment is not sought, and that action is not prosecuted to hinder, delay or defraud any creditor of the defendant [§ 538]; debits and credits of the defendant may be attached [§ 542]; unless sooner released or discharged the attachment ceases at the expiration of three years after the issuance of the writ [§ 542b]; and if judgment be recovered by the plaintiff, the proceeds of debits or credits collected by the levying officer, not in excess of the amount required to satisfy the judgment, shall be paid over to the plaintiff. [§ 550].
 
 
 47
 Decisions of the reviewing courts of California have had occasion to pass upon the nature, effect, and priority of attachment liens. The lien acquired by attachment is a vested interest affording specific security for satisfaction of the debt put in suit. McCaffey C. Co., Inc. v. Bank of America, 109 Cal.App. 415, 294 P. 45 (1930). It is contingent and uncertain in its tenure, being dependent upon an outcome of the proceedings favorable to the plaintiff. Puissegur v. Yarbrough, supra. It does not affect the title of the debtor to the attached property or prevent him from transferring it subject to the lien. Howe v. Johnson, 117 Cal. 37, 48 P. 978 (1897). Neither a subsequent conveyance, Riley v. Nance, 97 Cal. 203, 31 P. 1126, 32 P. 315 (1893); Martinovich v. Marsicano, 150 Cal. 597, 89 P. 333 (1907); nor a mortgage of real property, Bank of South San Francisco v. Pike, 53 Cal.App. 524, 200 P. 752 (1921), validly attached can divest the lien of the attachment. The grantee or mortgagee, as the case may be, takes only the interest which the grantor or mortgagor had at the time of the transfer. However, after all valid liens are satisfied he is entitled to what remains, or he may pay the claims and take the property.
 
 
 48
 In United States Overseas Airlines v. County of Alameda, 235 A.C.A. 410 at p. 415, 45 Cal.Rptr. 337, at p. 340 (1965), it is stated:
 
 
 49
 "A sheriff serving a writ of attachment is an officer of the court (Sparks v. Buckner, 14 Cal.App.2d 213, 220, 57 P.2d 1395) but is not its agent. He is the agent of the attaching creditor and the attached property in the custody of the sheriff is constructively in the possession of the attaching creditor (McCaffey C. Co. Inc. v. Bank of America, 109 Cal.App. 415, 423, 294 P. 45).
 
 
 50
 "The levying officer acquires only a special lien dependent on possession which authorizes him to hold the property (Civ.Code, § 3057; Code Civ. Proc. § 542) for the benefit of the attaching creditor. (United States v. Fisher, D.C., 93 F.Supp. 73, 75)."
 
 
 51
 It is our view that the District Court erred when it concluded that no transfer occurred upon the levy of the writ of attachment in the instant case, since we believe that under California law the lien of the attachment was so far perfected by the levy "that no subsequent lien on such property, obtainable by legal or equitable proceedings, could become superior to the rights of the transferee", which in this case was the appellant. The levy occurred while the debtor was solvent and at a time more than four months before the filing of the petition in bankruptcy.
 
 
 52
 In reaching its conclusion the court in Rialto relied upon three decisions: United States v. Security Trust and Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950); Puissegur v. Yarbrough, supra; Ward v. C. I. R., 224 F.2d 547 (9th Cir. 1955).
 
 
 53
 In Puissegur v. Yarbrough, supra, the court stated that the attaching creditor obtained only a "potential right or contingent lien." Such statement was made in reference to an attachment lien which ceased to be of any force or effect at the expiration of three years after the issuance of the writ of attachment.
 
 
 54
 In United States v. Security Trust and Savings Bank, supra, the court held that a tax lien of the United States obtained under 26 U.S.C. §§ 3670, 3671, 3672,[4] was prior in right to an attachment lien on property in California obtained under §§ 537, 542a of California Code of Civil Procedure, where the federal tax lien was recorded subsequent to the date of the attachment lien but before the attaching creditor obtained judgment.
 
 
 55
 Sec. 3670 in substance provided that if any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (plus interest, etc.) shall be a lien in favor of the United States upon all property and rights to property belonging to such person.
 
 
 56
 Sec. 3671 in substance provided that the lien arises when the assessment lists are received by the Collector unless another date be specified by law.
 
 
 57
 Sec. 3672 in substance provided the lien "shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor" until notice thereof has been filed by the Collector in the manner therein stated.
 
 
 58
 In the course of its opinion in the last cited case the Supreme Court stated at p. 51 of 340 U.S., at p. 113 of 71 S.Ct.:
 
 
 59
 "In cases involving a kindred matter, i. e., the federal priority under Rev.Stat. § 3466, it has never been held sufficient to defeat the federal priority merely to show a lien effective to protect the lienor against others than the Government, but contingent upon taking subsequent steps for enforcing it. People of State of Illinois ex rel. Gordon v. Campbell, supra, 329 U.S. [362] 374 [67 S.Ct. 340 at 347, 91 L. Ed. 348]. If the purpose of the federal tax lien statute to insure prompt and certain collection of taxes due the United States from tax delinquents is to be fulfilled, a similar rule must prevail here." (Footnote omitted.)
 
 
 60
 Ward v. Commissioner, supra, is a review of the decision of the Tax Court which decreed deficiencies in the petitioner's income taxes for a specified year. The partnership business in which taxpayer held a one-third interest was sold in the year 1946. Taxpayer's share of the purchase price was $211,111.26. Payments of taxpayer's share in the proceeds of sale were all paid in 1946 except the sum of $17,000.00. Such amount was not paid to him in 1946 because the receiver of the partnership, to whom the purchase price was paid, was served with a writ of garnishment in an action by a creditor of the taxpayer. The attached funds were paid to or for the account of the taxpayer in 1947. The Tax Court held that the taxpayer was required to report the entire purchase price in the year 1946. Such decision was affirmed by this court. This court, in its opinion, considered the nature of attachments under California law, including the statement from Puissegur, supra, that an attachment creditor "obtains only a potential right or a contingent lien", and also quotes from the decision in United States v. Security Trust and Savings Bank, supra, concerning the nature of an attachment lien under California law.
 
 
 61
 It is to be noted that none of the cases relied upon in Rialto involved any provisions of the Bankruptcy Act and none has any controlling significance on the problem involved in the instant case.
 
 
 62
 While the attachment lien in the instant case is said to be contingent and inchoate in the sense that it might be defeated by subsequent events, i. e., failure to obtain a judgment, or lapse of time, nevertheless, so long as it exists it is a specific lien on the property attached. No subsequent lien on said property obtainable by legal or equitable proceedings could become superior under the law of the State of California to the rights of the attachment creditor. See Metcalf Brothers & Co. v. Barker, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122 (1902).
 
 
 63
 We hold under the facts of this case that the lien of the attachment was immune from attack by the trustee in bankruptcy under § 60 of the Bankruptcy Act. In its holding to the contrary, Rialto is overruled.
 
 
 64
 We affirm the order of the District Court not on the ground that the petition of Bass, as trustee, was barred by the two year limitation statute set up in § 11(e) of the Bankruptcy Act [11 U.S. C.A. § 29(e)], but on the ground that a valid transfer occurred more than four months before the filing of the petition in bankruptcy, and at a time when the debtor was solvent.
 
 
 65
 In view of our conclusions we need not pass upon the cross-appeal and the same is dismissed as moot.
 
 
 
 Notes:
 
 
 [1]
 Authorized under Rule 76, Federal Rules of Civil Procedure
 
 
 [2]
 Section 1(30) of the Bankruptcy Act [11 U.S.C.A. § 1(30)] states:
 "`Transfer' shall include * * * every * * * mode * * * of fixing a lien upon property or upon an interest therein, absolutely or conditionally, * * * as a * * * lien, * * *, security, or otherwise; * * *."
 
 
 [3]
 The attachment lien was levied at a time when the debtor was insolvent and within four months before the filing of the petition in Bankruptcy. § 67(a) (1) of the Bankruptcy Act [11 U.S.C.A. § 107(a) (1)], supra, provides in these circumstances that such lien is deemed null and void
 
 
 [4]
 Substantially the same language now appears in 26 U.S.C. §§ 6321, 6322 and 6323