In re B–WAY CONSTRUCTION, dba
Lane Trenching, Inc., Debtor.

Paul LANSDOWNE, Trustee, Plaintiff,

v.

LES SCHWAB TIRE CENTER OF
OREGON, INC., Defendant.

Bankruptcy No. 681–06651–W7.
Adv. No. 684–6044–W.

United States Bankruptcy Court,
D. Oregon.

Dec. 22, 1986.

Richard A. Carlson, Eugene, Or., for plaintiff.

Christine Van Eck, Portland, Or., for defendant.

G. Jefferson Campbell, Jr., Medford, Or., for trustee.

Craig K. Edwards, Portland, Or., for creditors.

## MEMORANDUM OPINION

POLLY S. WILHARDT, Bankruptcy Judge.

This matter is before the court upon cross motions for summary judgment filed by Les Schwab Tire Center of Oregon, Inc., (hereinafter Schwab) and Paul Lansdowne, trustee, in this adversary proceeding to avoid a preferential transfer under 11 U.S.C. § 547. Both parties agree that the facts are not in dispute and that the issue before the court is solely a question of law. The court concurs. The stipulated facts are:

1. B–Way Construction, Inc., the debtor in the related chapter 7 case, filed a petition for relief on December 18, 1981.

2. On November 24, 1980, in Lane County Circuit Court Schwab was granted a judgment against B–Way Construction, Inc., in the amount of $3,705.53 plus interest at the rate of 1.5% per month from July 25, 1980, together with the defendant's costs and disbursements of $77.50 and attorney's fees of $450.00.

3. On July 14, 1981, Schwab obtained the issuance of a writ of garnishment. On July 20, 1981, this writ was legally and duly served on E. B. Sahlstrom, the debtor's attorney, who was holding $30,267.79, constituting debtor's funds in a trust account.

4. Sahlstrom returned a certificate pursuant to ORS 29.235 refusing to pay to the Lane County Circuit Court any funds he was holding on behalf of the debtor to satisfy Schwab's judgment against the debtor.

5. Pursuant to ORS 29.343 and after Sahlstrom had filed an answer to allegations, a hearing was held on Sahlstrom's certificate on the garnishment. A personal judgment was entered against Sahlstrom pursuant to which he issued a check in the amount of $4,903.14 drawn on his client's trust account. This account contained only the debtor's funds. Sahlstrom delivered the check to Schwab on November 18, 1981.

6. The payment was credited on account of the antecedent debt owed by B–Way Construction to Schwab and was the basis of Schwab's satisfaction of the judgment against E.B. Sahlstrom entered on November 24, 1981.

7. The payment enabled Schwab to recover more than it would have received as a creditor, if, (1) the payment had not been made and, (2) Schwab had received payment on the debt to the extent provided by Chapter 7 of the Bankruptcy Code.

8. The debtor is presumed to have been insolvent on November 18, 1981. No evidence to rebut the presumption has been presented.

9. Schwab is not an insider within the meaning of 11 U.S.C. § 101(28).

 The sole issue before this court is whether Schwab's receipt of $4,903.14 constituted a transfer avoidable under § 547(b). To determine if the transfer is avoidable the court must find that the "transfer" took place within 90 days of filing the bankruptcy petition. For purposes of § 547 a transfer is made:

(A) At the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) At the time such transfer is perfected, if such transfer is perfected after such 10 days.

Under § 547 a transfer is generally equated with perfection. The time at which a transfer in personal property is perfected is defined by § 547(e)(1)(B) as: "when a creditor on a simple contract can-

not acquire a judicial lien that is superior to the interests of the transferee."

Under our facts the issuance and service of the writ of garnishment was outside the 90 day period; the payment on the judgment was not. Whether the transfer, under these facts, was perfected as defined by § 547(e)(1)(B) prior to or within the 90 day preference period depends on state law.

Under Oregon law does the issuance and service of a writ of garnishment place the garnishor in a position with regard to the garnished funds that a creditor on a simple contract cannot acquire a judicial lien on that property that is superior to the garnishor's? This is a question of first impression in Oregon. However, there are numerous cases in other jurisdictions which have analyzed their state law to decide the same question. Courts have reached different conclusions, as the states' laws have varied.

> Generally, the conclusions depend upon the significance each state gives to the occurrence of either the issuance and service of a writ of garnishment, or the final order or judgment on the garnishment action. The event that triggers a perfection under state law would determine when the transfer occurred for bankruptcy purposes.

*Marsh v. Heldt Lumber Co. (In re McCoy)*, 46 B.R. 9, 11 (Bankr.D.Ariz.1984)

■ Before the court addresses the issue before it it needs to dispose of an argument which the defendant has made which this court believes is simply a "red herring." Defendant argues that when Sahlstrom paid the funds to the defendant he was paying a judgment entered against him personally. As he paid a judgment against himself what he did theoretically was satisfy the judgment out of his own funds and exercise his right of indemnity against the debtor's trust fund. Thus the real transferee of the debtor's funds was not Schwab but Sahlstrom.

The parties stipulated that Sahlstrom in fact used the debtor's funds, not his own, to satisfy the judgment. Whether or not this was legally appropriate it resulted in the debtor's assets being reduced by $4,903.14. The funds were paid to Schwab on account of an antecedent debt owed by the debtor. This laid the groundwork for a potential preferential transfer. The creditor's argument has no merit.

Oregon's garnishment statutes, ORS 29.-125 *et seq.*, do not state whether any kind of lien is created upon the issuance or service of a writ of garnishment.

In *Matsuda v. Noble*, 184 Or. 686, 200 P.2d 962 (1948), a case relied upon by Schwab, a garnishee held funds owing to a debtor, Noble, who was both an agent for one party, Matsuda, and a lessee of another party, DeCoster. The funds which the garnishee owed Noble were funds which Noble owed to his principal, Matsuda, not to his lessor, DeCoster. DeCoster claimed that Noble also owed him money, and had a writ of attachment issued and a notice of garnishment served on the garnishee. The garnishee returned a certificate showing that it owed monies to Noble, which funds were paid to DeCoster, the garnishor. Matsuda then sued for the recovery of his funds. The court held that the claim of DeCoster to the money held by the garnishee was inferior to that of Matsuda, since DeCoster had not met his burden of proving that he had no knowledge of Matsuda's claim to the funds in the garnishee's hands. The court stated that a garnishor has the status of a bona fide purchaser only if he can allege and prove facts establishing his position as such. "Garnishment creates no lien on any money in the hands of the garnishee." *Murphy v. Bjelik*, 87 Or. 329, 169 P. 520 (1917) *rehearing denied*, 87 Or. 329, 170 P. 723 (1918) *cited with approval in Matusda, supra*, 184 Or. at 702, 200 P. 962. Thus under *Matsuda*, the act of garnishment does not automatically give the garnishor a prior claim on funds held by the garnishee, since the garnishor must still demonstrate that he has no notice of any other claims.

*Matsuda* does not address the interests of a garnishor (a creditor of the debtor) in juxtaposition to those of another creditor of

the debtor. Rather, it addresses the rights of a creditor of the debtor vis a vis an alleged third party owner of the garnished funds, which fact situation is not now before the court. *Matsuda* does have limited relevance to the case at hand, however, in that it clarifies that in Oregon a garnishor will not automatically obtain a lien upon the issuance and service of a writ of garnishment.

In *Murphy v. Bjelik, supra,* 87 Or. 329, 169 P. 520, a garnishor commenced an action against its debtor on a promissory note. The garnishor obtained a pre-judgment writ of attachment and a notice of garnishment which was served on the garnishee. The garnishee returned a certificate indicating that it owed monies to the debtor. The garnishor then obtained a judgment against its debtor as well as against the garnishee. By obtaining such judgment against the garnishee, the garnishor disregarded the statutory requirements which only permitted a judgment against the garnishee if the garnishee failed to return a certificate or if the garnishor were dissatisfied with the certificate returned by the garnishee. The garnishor had not indicated any dissatisfaction with the garnishee's certificate before proceeding to obtain a judgment against him. An execution was issued on the judgment, and the sheriff levied upon two tracts of land apparently owned by the garnishee without first making demand on the garnishee to pay over the amount of money which it had stated in its return certificate that it owed the debtor. The garnishee's land was sold by the sheriff to pay the garnishor. At the sheriff's sale, the garnishor bought the land and assigned his certificate of sale to the plaintiff, Murphy, who then filed a quiet title action. All the answering defendants in the case held unpaid judgments against the garnishee. The court held that the sheriff's sale of the property was void because it was made pursuant to a judgment not provided for by statute, and without first making demand for payment on the garnishee. After stressing that the procedural requirements of the garnishment statute must be strictly complied

with, the court noted that the garnishment did not create a lien in favor of the garnishor upon any money in the hands of the garnishee, or on any property owned by it. Rather, "it gave rise to a contingent personal liability to respond to any judgment that might afterward be recovered" by the garnishor against his debtor if the garnishment were pre-judgment. *Id.* at 352, 353, 169 P. 520.

■ Here although Schwab obtained and served the writ after obtaining a judgment against B–Way, the court finds issuance and service of the writ did not by itself create a lien in favor of Schwab on the debtor's funds in Sahlstrom's possession. Schwab was dissatisfied with Sahlstrom's certificate and proceeded against him as provided for by ORS 29.125 *et seq.* In such an event a garnishee loses his status as an independent stakeholder and becomes a litigant in his own right. *Overturff v. Carroll,* 109 Or. 326, 219 P. 1081 (1923). Whatever interest in the funds being held which Schwab acquired by issuance and service of the writ of garnishment was contingent and uncertain since it depended on the outcome of proceedings against Sahlstrom.

■ In *Bass v. Stodd,* 357 F.2d 458 (9th Cir.1966), a case under the Bankruptcy Code of 1978, the Ninth Circuit Court of Appeals considered a situation where a creditor commenced an action against a debtor corporation, obtained a pre-judgment writ of attachment, and served a writ of garnishment on a bank which held funds belonging to the corporate debtor. At the time the writ was served the corporation was not insolvent. More than four months after the garnishment was served, both the creditor and the debtor corporation filed petitions in bankruptcy. Approximately two years and three months after service of the garnishment, the garnishee bank paid over the funds to the trustee of the bankrupt creditor. The trustee for the bankrupt debtor corporation then brought suit against the trustee of the bankrupt creditor's estate contending that payment

of the funds by the garnishee bank to the creditor constituted a preferential transfer.

Although this was a garnishment case, the court referred to the procedure throughout as a process of attachment. The court held that under California law the lien acquired by attachment in a garnishment proceeding was contingent and uncertain since it depended on the outcome of the underlying action being favorable to the garnishor. *Id.* at 464. The court noted that the attachment lien was "inchoate" in the sense that it could be defeated by subsequent events, such as failure to obtain a judgment against the debtor, or lapse of time. However, the court noted that no subsequent lien on the same property obtainable by legal or equitable proceedings could become superior under California law to the rights of the attaching creditor. The court held that since the date of the levy of attachment and issuance of the writ of garnishment occurred more than four months prior to the filing of the bankruptcy petition payment of the funds by the garnishee bank some two years after the filing of bankruptcy by the debtor corporation did not constitute a voidable preference.

Other courts have followed this reasoning: *Metcalf Bros. & Co. v. Barker*, 187 U.S. 165, 172, 23 S.Ct. 67, 70, 47 L.Ed. 122 (1902); *Walutes v. Baltimore Rigging Co.*, 390 F.2d 350 (4th Cir.1968); *In re Lamm*, 47 B.R. 364 (E.D.Va.1984); *Suppa v. Capalbo (In re Suppa)*, 8 B.R. 720, 722 (Bankr.R.I.1981); and *In re Acorn Electric Supply, Inc.*, 348 F.Supp. 277, 281 (E.D.Va. 1972). In *Acorn*, a case under § 60 of the Bankruptcy Act, predecessor of 11 U.S.C. § 547, the court stated: "For the purposes of bankruptcy, the judgment lien need not be absolute, unequivocal or irrevocable. It need only be superior to the rights of a subsequent creditor ..." Likewise the language of § 547(e)(1)(B) indicates to this court the garnishor's lien need not be absolute unequivocal or irrevocable. It is sufficient if no subsequent judicial lien creditor can obtain an interest in the property superior to the garnishor's.

Although this court has found no Oregon cases on point, I know of no statute or any basis in law that would give a subsequent judicial lienor on the same property as that levied upon by a garnishor a superior right to that property.

Although the interest Schwab acquired in the property when the writ of garnishment was issued and served was contingent and uncertain, nevertheless, pending the outcome of the suit against Sahlstrom, Schwab's interest in the funds was superior to any interest in those funds that could have been obtained by a judicial lien creditor subsequently. Schwab's motion for summary judgment should be granted. The trustee's motion for summary judgment should be denied.

This Memorandum Opinion contains the court's findings of fact and conclusions of law and pursuant to Bankruptcy Rule 9014, which incorporates Rule 7052, they will not be separately stated.

An order consistent herewith shall be entered.